```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ALAN M. SPANJER,

                          Plaintiff,        06-CV-6017T

              v.                            DECISION
                                            and ORDER
JO ANNE B. BARNHART, Commissioner
of Social Security,

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff Alan M. Spanjer ("plaintiff" and/or "Spanjer"), brings this action pursuant to Title XVI of the Social Security Act ("Act"), codified at 42 U.S.C. § 405(g) claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for disability benefits ("DIB"). Specifically, Spanjer alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case and denied his application was erroneous because it was not supported by the substantial evidence in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. The plaintiff has also moved for judgment on the pleadings.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits on September 13, 2002 claiming disability as of September 14, 1994, due to chronic daily headache pain related to surgery for

an arachnoid cyst. (Tr. 70-72, 159) His application was denied without a hearing both initially and upon reconsideration. Thereafter, a hearing was held on March 2, 2004 by the ALJ during which plaintiff and his attorney were present. (Tr. 582-624) In a decision dated April 26, 2005, the ALJ found that plaintiff was not disabled. (Tr. 15-23) This decision became the final decision of the Commissioner on November 15, 2005 when it was approved by the Appeals Council. (Tr. 4-10, 14) This action followed.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). Both plaintiff and defendant move for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings may be granted where material facts are undisputed and where judgment on the merits is possible merely by considering the contents of pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). For the reasons that follow, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for judgment on the pleadings is denied. Accordingly, the case is remanded for calculation of benefits.

## II. Plaintiff's Medical History

Plaintiff is a forty-six year old man who lives with his wife. He attended college but never graduated. (Tr. 585) However, he finally received his degree in 1986. (Tr. 165) Plaintiff ran a printing business from 1991 to 1997. After September 14, 1994, plaintiff went from working eighteen hours a day to working five to fifteen hours a week (Tr. 144). From the summer of 2000 to May 2002, he also worked an average of nine hours a week as a sign language interpreter. (Tr. 147, 160). Plaintiff was last insured for DIB on December 31, 1996. (Tr. 73).

Since childhood plaintiff has suffered headaches and in September of 1994 while on a trip to Colorado with his wife, he developed an intense headache, which caused him to undergo various surgeries without relief. (Tr. 565) Spanjer claims that he

continues to suffer from persistent and intense headaches accompanied by impaired concentration, memory loss, dizziness and occasional phonophobia (abnormal sensitivity to sound). (Tr. 450) He testified that despite surgery, he suffered headaches lasting from 30 minutes to three hours and sometimes 36 hours or more. (Tr. 589-590) Plaintiff is bed bound once a week and his headaches fluctuate unpredictably. (Id.) Plaintiff's wife testified that her husband experienced variable concentration and moods and disturbed sleep since there was no regular cycles to his pain. (Tr. 603-604)

In addition to plaintiff's testimony, a number of medical reports and records were received in evidence by the ALJ, which documented both plaintiff's continuous complaints of headache pain and the numerous attempts to diagnose and treat the cause of the pain. (Tr. 584-608) In September 1994, Dr. Jerry Bauer, a neurosurgeon opined that plaintiff's arachnoid cyst was the likely cause of his headaches. (Tr. 451) On September 14, 1994, plaintiff underwent a shunt insertion surgery to drain the cyst. (Tr. 179) Spanjer continued to feel low pressure symptoms related to the shunt and on November 3, 1994 underwent a second procedure to alleviate the symptoms. (Tr. 176-83). In January 1995, plaintiff reported to Dr. Bauer that his headaches were less frequent and a neurological examination showed that the shunt wound was well healed. (Tr. 445). However, due to continued headaches, Dr. Bauer recommended plaintiff see a neurologist.

On January 24, 1995, neurologist Dr. Barry Weber saw plaintiff and found that neurological examination was within normal limits

with continued sensitivity in the area of the surgical site. (Tr. 428) Dr. Weber diagnosed migraine headaches without aura and suspected that the arachnoid cyst was unrelated to his headaches. (Id.) When plaintiff saw Dr. Bauer again in July and October 1995 he was still suffering from debilitating pain. Throughout 1996, Spanjer also continued seeing his treating primary case physician, Dr. Stuart Goldman, who opined that the pain and persistent headaches were the results of temporomandibular joint dysfunction ("TMJ"). (Tr. 565-567) Plaintiff's pain and headaches continued and in June 1996, plaintiff met with Dr. Peter Johnson, a plastic surgeon who recommended a field block to the shunt to try to relieve the pain. (Tr. 442) On February 10, 1997, Dr. Bauer recommended the removal of the shunt or the cyst to try to alleviate the persistent headaches and pain. (Id.)

In May 1997, plaintiff went to the ER to check his shunt because of complaints of dizziness, nausea and ill-defined headaches. (Tr. 452-60) A CT scan of the brain was normal and unchanged from previous examinations. In June 1997, plaintiff was admitted to the ER again for fever, suspicion of a shunt infection, and meningitis. (Tr. 575). Spinal fluid examination from shunt tap results were normal. (Id.) Plaintiff's debilitating headaches continued and in August 1997, he obtained another opinion from Dr. Seymour Diamond, who diagnosed atypical cluster headaches. (Tr. 515-517) Dr. Diamond observed that this was an "unusual case" and that it was "very complex." (Id.)

Dr. Bauer suggested surgery to remove the right angle anchoring clip of the shunt and the procedure was performed on September 16, 1997. (Tr. 523) However, this procedure provided no relief to plaintiff. In November 1997, Spanjer also saw a psychologist, Joe Zander, Ph.D. and complained to him of chronic pain, depression and irritable mood. (Tr. 187) The psychologist felt that the depression was reactive to plaintiff's chronic pain. (Tr. 566). Plaintiff also obtained a second neurosurgical opinion from Dr. Bryce Weir who was unable to make a specific diagnosis except to suggest tying off plaintiff's shunt to observe whether plaintiff's headaches were related to pressure from the cyst fluid. (Id.) Dr. Richard North, professor of Neurosurgery at John Hopkins University also examined the medical record and the plaintiff. He opined that plaintiff suffered from peripheral neuropathic pain syndrome. (Tr. 568) In December 1997, Dr. Goldman, having exhausted all treatments available in the area, referred plaintiff to the Mayo Clinic in Rochester, MN. (Tr. 565)

In preparation for plaintiff's administrative hearing, Dr. Dewey Nelson, a neurologist, provided an opinion regarding plaintiff's disability. Dr. Nelson stated that there was no provable organic reason for plaintiff's claimed headaches. (Tr. 574) He noted that the proposed etiologies for the headaches (including arachnoid cyst pressure, cluster migraine headaches, muscle tension, anxiety and depression) all had insufficient proof to meet Agency standards. (Tr. 571) Dr. Nelson stated that Spanjer did not meet or equal any impairment described in the Listing of

Impairments. (Id.) Further, he stated that the medical evidence did not support plaintiff's allegations of frequent headaches, dizziness, or impaired cognition. (Tr. 573) Dr. Nelson summarized by stating that his impression was that plaintiff had chronic depression, worsened by worries about neurological complications and transformed by long-term opiate ingestion from a previously existing migraine syndrome to daily chronic headaches. (Tr. 571-74) He recommended consultation by a board-certified psychiatrist to see whether the standards were met for major depression. (Id.)

On August 11, 2004, Dr. Margaret Friel reviewed the record and determined that there was no medically documented psychiatric impairment from 1994 through 1999. (Tr. 578)

### III. **The Substantial Evidence in the Record Supports a Finding That Plaintiff is Disabled**.

The ALJ decided that based on the evidence before him the plaintiff had no medically determinable impairment, did not have a "severe" impairment and thus, did not suffer from a disability under the Act.[1] (Tr. 23) Specifically, the ALJ found that while plaintiff alleged headaches and pain, plaintiff had no medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii).[2] In making this finding, the ALJ relied on the opinion of Dr. Nelson

---

[1] A "medically determinable" impairment is one that results from anatomical, physiological or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. § 423(d)(3); see also 20 C.F.R. §§ 404.1505, 404.1508, 404.1512(a) and (c).

[2] In assessing a claim of disability, the ALJ was required to consider: (1) objective medical facts; (2) diagnoses or medical opinions of examining or treating physicians; (3) subjective evidence of symptoms and pain testified to by the claimant; and (4) the claimant's educational background, age, and experience. DeLeon v. Apfel, 2000 WL 1873851 at 8; see also, e.g., Williams v. Bowen, 859 F.2d 255, 259 (2d Cir.1988); Morel v. Massanari, 01 Civ. 0186, 2001 WL 776950 at 5 (S.D.N.Y. July 11, 2001).

who stated that "there was no provable organic reason" for plaintiff's headaches. (Tr. 22) Moreover, the ALJ considered plaintiff's symptoms under the regulations, which provide that an individual's statement as to pain or other symptoms, by itself, does not provide conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). The ALJ concluded that although plaintiff alleged chronic pain and daily headaches, neither tests nor surgery established a physiological explanation for his symptoms. (Id.) Accordingly, the ALJ determined that plaintiff did not have a medically determinable impairment and was not disabled. (Tr. 22-23)("Essentially we are left with the uncorroborated statements of the claimant (and his spouse) that he is disabled, and this is an inadequate foundation upon which to award benefits.")

"It has been established, both in this Circuit and elsewhere, that subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); see also Lugo v. Chater, 932 F.Supp. 497, 502 (S.D.N.Y. 1996). The ALJ also has the discretion to evaluate the credibility of a claimant's complaints of pain. Marcus, 615 F.2d at 27. However, the ALJ is required to take objective medical reports into consideration when making such a judgment. Id. at 27-28. Furthermore, the ALJ may not discount subjective complaints of pain solely because physicians have been unable to diagnose the source of that pain. Id.; see also Ber v.

Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964) ("Even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits"). In this case, the ALJ improperly discounted Spanjer's reports of pain on the ground that no physician had supplied a diagnosis for that pain. This is in direct opposition to the Marcus rule. See Valle v. Califano, 1979 U.S. Dist. Lexis 13414 at *6 (S.D.N.Y. 1979).

While plaintiff concedes that no medical professional has been able to diagnose the cause of his complaints of pain, it is equally compelling to note that not one of the doctors that plaintiff sought treatment from or who reviewed his medical records found that plaintiff was malingering or that his pain was not real or exaggerated. See Valle, 1979 U.S. Dist. Lexis 13414 at *7-8. In Valle, the Court held that the failure of clinical tests to reveal abnormalities to support claimant's symptomology does not necessarily bar her claims. The court noted that the issue is whether the claimant is disabled by her pain, not whether its causes can be identified with medical certainty. Id.

The Valle case is virtually identical to the present case. It is noteworthy that the record here presents overwhelming evidence of the plaintiff's efforts to find relief for the continuous headache pain. The medical records demonstrate the plaintiff has sought treatment from multiple neurological experts in an effort to get an accurate diagnosis and obtain relief from his chronic headache pain. In a report dated October 8, 2002, Dr, Goldman

indicated that in the time he had seen plaintiff from August 24, 1994 to January 29, 2001, plaintiff complained of daily pain lasting for two to three hours even after surgery. (Tr. 184-86). On two occasions plaintiff sought opinions from medical specialists out of state when he had exhausted local medical sources. Moreover, plaintiff has undergone three surgeries and has had eight CT scans. Plaintiff was taking numerous medications including Vicodin four to six times a day from 1995 to 2001 to relieve the pain. (Tr. 184).

Further, none of the medical records reveal that any examining physician ever evinced disbelief as to the genuineness and severity of the pain suffered by plaintiff, though they may have disagreed as to the diagnosis. It would be inconceivable that the examining physicians would recommend aggressive treatments such as surgery and the use of addictive narcotics unless they have found plaintiff's complaints of pain to be credible. The suggestion that there is "no provable organic reason" for the headaches does not cast doubt on the reality of plaintiff's disabling pain. In addition, the ALJ discounted the plaintiff's testimony concerning his pain without sufficiently specifying his reasons. However, the medical records do not suggest that Spanjer's testimony as to his pain was not reliable. See Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) ("A finding that the witness is not credible must be set forth with sufficient specificity to permit intelligible plenary review of the record."); see also Dunbar v. Califano, 454 F.Supp. 1261, 1267-68 (W.D.N.Y. 1978) Here, the ALJ's finding that

plaintiff was not disabled disregarded the substantial medical evidence in the record supporting plaintiff's subjective complaints of disabling pain.

Since September 1994 plaintiff has suffered chronic headaches and pain, experienced memory loss, impaired concentration and phonophobia. Plaintiff describes the headache as "burning sensation pain `like ... [putting] four needles into one spot and then pull[ing] them apart.'" (Tr. 515) He suffers daily from the headaches, which could last thirty minutes to three hours and occasionally for up to thirty-six hours. Plaintiff is bed ridden at least once a week and his headaches leave him totally incapacitated most days. (Tr. 515) He is unable to sleep due to the pain without the help of medication and is often fatigued and requires rest. Thus, a fair reading of the record confirms that there is sufficient evidence to support a finding that plaintiff is disabled within the meaning of the Act.

## CONCLUSION

For the reasons set forth above, judgment on the pleadings is granted in favor of the plaintiff and defendant's motion for judgment on the pleadings is denied. This case shall be remanded to the Commissioner solely for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                          s/Michael A. Telesca
                                             MICHAEL A. TELESCA
                                   United States District Judge

Dated:   Rochester, New York
           February 1, 2007